IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America 4:24-CR-03895-RM-MSA

vs.

Steven Samuel Jung Rubin, March 12, 2026
11:23 a.m.
Defendant. Tucson, Arizona

OFFICIAL TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

BEFORE THE HONORABLE MARIA S. AGUILERA
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S

For the Government:

Branden Dean Kartchner
United States Attorney's Office
405 West Congress Street
Suite 4800
Tucson, Arizona 85701

For the Defendant:

Elizabeth Mackenzie Hannah
Dmitry Kashtelyan
Greta Maria Vietor
Federal Public Defender's Office
407 West Congress Street
Suite 501
Tucson, Arizona 85701

PROCEEDINGS WERE DIGITALLY RECORDED

TRANSCRIBED BY: ERICA R. McQUILLEN
405 West Congress, Suite 1500
Tucson, Arizona 85701
(520) 205-4267

P R O C E E D I N G S

(Call to order of court at 10:04 a.m.)

THE CLERK: Case Number CR-24-3895, United States of America vs. Steven Samuel Jung Rubin, now before this Court for a motion hearing on motion to sever.

Counsel, please state your appearance for the record.

MR. KARTCHNER: Good morning, Your Honor. Branden Kartchner on behalf of the United States.

THE COURT: Good morning.

MR. KASHTELYAN: Good morning, Your Honor. Dmitry Kashtelyan and Elizabeth Hannah here for Mr. Rubin, who's present, in custody.

THE COURT: Thank you. Good morning.

This is the time scheduled for a hearing on defendant's motion to sever counts. I did receive and review the briefing from both the Government and defense counsel in this matter.

All right. Mr. Kashtelyan, did you want to go first?

MR. KASHTELYAN: Actually, Ms. Hannah will be handling --

THE COURT: Okay. Thank you.

Ms. Hannah, if you could just come and speak into the microphone up here. Thank you.

MS. HANNAH: Thank you, Judge.

So as the Court is aware, the basic request of the motion is to sever Counts 2 through 5 of the indictment, which are unlawful possession counts, from Counts 1, 6, and 7, which involve counts of unlicensed stealing of firearms and fraudulent firearm dealing, essentially.

And my reading of the case law is that the standard for the Court to apply is whether the basis for joinder is evident from the face of the indictment. I know in its response the Government took a slightly different position, but that is my reading of the standard in the Ninth Circuit.

And just as an abstract example to illustrate why the charges here or the possession charges here don't automatically give rise to an inference that they're associated with the dealing counts is that a dealing, both unlicensed dealing and fraudulent dealing, could in theory have been conducted with perfectly legally possessed weapons.

And I want to be clear, I'm not saying that's what happened in this case but just to illustrate why the standard matters, and I don't think the Court needs to get to that hypothetical to reach the inference that these counts are not all properly joined.

I think the clearest example of that is Count 2, which involves possession of a firearm for which my reading of the disclosure is that the allegation is that the firearm was

gifted to a friend of the defendant's, and it's not clear why, if at all, that action, transferring a firearm as a gift, would be connected to unlicensed sales or to misrepresenting licensee status during a fraud scheme that's alleged to have occurred almost a year earlier.

Similarly, Count 5 involves an allegation of possession of a stolen weapon. Neither the fraud count nor the unlicensed dealing count involve allegations that the scheme solely involved stolen weapons or were intended to distribute stolen weapons. It appears from the disclosure that that weapon happened to be stolen and that's why the count exists. Similarly, the firearms in Counts 2 through 5, my reading of the disclosure is that those were not the firearms that were involved in the fraud scheme listed in Count 6 and 7.

And so I say all this to illustrate that it's tempting to just look at a bunch of firearms charges and infer that they're all connected to unlicensed and fraudulent dealing of firearms, but I don't think you can reach that conclusion just from the indictment alone.

We don't dispute that there's overlapping evidence as to some of these firearms, particularly in that the disclosure, my reading of it, does suggest that counts -- the firearms in Counts 3 through 5 were sold or offered to be sold.

To that I would just say, A, that's not clear from the indictment itself, but B, even if the Court takes the position that, you know, the indictment suggests that all of these counts are related, the possession counts require significant proof as to mens rea that's not required to prove unlicensed dealing or fraud, and specifically the jury is going to hear as to the possession counts testimony and evidence that the defendant both possessed weapons that were especially dangerous to possess or had unlawful characteristics and that he knew about those characteristics.

And given that the fraud counts require proof of separate mens rea, so knowledge of the firearms license laws, knowing misrepresentation of licensee status, it would be especially prejudicial for the jury to hear that he knowingly possessed unlawful firearms or prohibited firearms and then map that mens rea onto the fraud and unlicensed dealing counts.

So that is to say, if the Court concludes that joinder is proper, the prejudice in this case is so severe that I think it provides an independent basis for severance, and I think I'll stop there and let the Government proceed.

THE COURT: Okay. I know you mentioned that Count 1, that the Counts 2 through 5 were different from the Count 1, but the bank fraud also was a year before these firearms were possessed, right, so there's no way -- so we don't know

if those guns are the ones that were used as part of the fraud; right?

MS. HANNAH: My understanding is that the specific fraud that's alleged, so from September 8th to the 20th, 2022, that specific fraud involved weapons which the Government did list in its reply and --

THE COURT: Is it listed on the indictment, though, if we're only looking at the face of the indictment?

MS. HANNAH: Give me one second.

I don't believe that it is.

THE COURT: Okay. So there's no specific firearms listed in either count, either the dealing in firearms or the scheme to defraud?

MS. HANNAH: Correct.

THE COURT: Okay.

MS. HANNAH: And those, I mean --

THE COURT: And the dates are completely different.

MS. HANNAH: Well, so I do want it to be fair. The unlicensed dealing count I believe does have overlap with the possession counts. I think the fraud counts are entirely different.

THE COURT: Okay.

MS. HANNAH: Yeah.

THE COURT: All right. Thank you.

MS. HANNAH: And I think, to understand really

what's going on underneath all that, you would have to look to the disclosure.

THE COURT: Right. So I'm just saying, based on the face of the indictment, though --

MS. HANNAH: Correct.

THE COURT: -- there's no -- other than they happened in the same year. That's really the overlap, right --

MS. HANNAH: Correct.

THE COURT: -- 2023 --

MS. HANNAH: Correct.

THE COURT: -- but other than that -- because the trafficking ended November 3rd of 2023, right, and then the possessions were November 27 of 2023?

Am I right?

MS. HANNAH: I mean, they say from a date unknown to November 27th. That doesn't provide enough information, I think, to understand the extent to which they were overlapping.

THE COURT: To -- continuing to November. It doesn't say -- oh, it does say continuing to on about November 3rd, but -- yeah.

Okay. All right. Thank you.

MR. KARTCHNER: Your Honor, before I offer any prepared remarks, does Your Honor have any questions?

THE COURT: I guess I'm wondering why you think that we can -- or why the Government, I shouldn't say you -- the Government believes that the Court, in deciding whether joinder is proper, can look beyond an indictment to determine that.

MR. KARTCHNER: Well, Judge, I think that, even if we look at the plain language -- we can set aside that question because we can look at the plain language of the indictment and reach the same conclusion that joinder is appropriate here.

And I think, if you look at the foundational case law, joinder is the rule rather than the exception, and one of the overarching concerns that the Ninth Circuit points out is -- and they say "dominant concern" -- is judicial economy. Specifically, when joint counts are logically related and there is a large area of overlapping evidence or proof, joinder is appropriate.

And so let's just look at the plain language of the indictment. What's common here is it's obvious that guns are involved in each and every count. The first count has to do with engaging in the business of dealing without a license. A lot of the proof that the Government would offer for Counts 2 through 5 deal with that.

If you break down each and every count, Count 3 has to do with the sale of a firearm, possession of a firearm that

the disclosure would indicate was ultimately sold. Or I'm sorry. Count 2 has to do with a shotgun that was possessed, and defense has made a distinction, saying, hey, this was a gift, it wasn't sold. However, the disclosure indicates that the recipient of the alleged gift was told by the defendant that he would help register it with the ATF, which he never did, so the defendant said, hey, I'm going to register it with the ATF.

He also represents to that specific individual --

THE COURT: That he would register a short-barreled shotgun? Can you register short-barreled shotguns?

MR. KARTCHNER: Well --

THE COURT: I thought they were just illegal.

MR. KARTCHNER: For certain -- you have to have certain licenses -- licenses and approvals with the ATF in order to do that, which is why it's relevant, because not only did the defendant represent that he could help register it with the ATF, he also represented to this particular recipient that he had a specific license, which would give the impression that, for this particular firearm, you could get it registered.

And whether or not you can actually register a short-barreled rifle is something that was discussed with this particular witness, and so it goes to this scheme alleged in Count 1, which is engaging in the business of dealing.

THE COURT: But again, the only reason you know that is because you're going beyond the indictment. I mean, I think the defense made an excellent point when they said a person can be guilty of Count 1 but be dealing with legal firearms; right? Glocks, you know, they buy Glocks all the time, and then they turn around and sell them at a higher rate on the black market because people that can't buy firearms at a firearms dealer will pay more. So it's not necessarily that the Glock is illegal. It's the act of selling.

And to prove that charge, don't you -- correct me if I'm wrong. Don't you have to prove that they -- there's financial information that has to go into it; right? There's a financial component to that because you have to make so much money within a certain period of time. It's not just selling a firearm. That's not -- so it's not just the fact that a person is selling firearms.

I mean, it's like the quantity and -- there's a lot more that goes into that charge. So the fact that someone has possession of illegal weapons, how does -- how does that help or prove the charge of dealing in firearms?

MR. KARTCHNER: I think -- I think you're right. I think defense does make a good point in that you could engage in the practice of dealing in firearms, and those firearms can be strictly legal. That is true. But when we're looking at joinder, the question is whether each and every count is

substantially similar -- that's Rule 8 -- and whether they're logically relied.

And also, in terms of this question of judicial economy, what is true is, in proving Counts 1, 6, and 7, evidence from Count 2 through 5 would also be introduced in both trials.

So if the Court is to sever this, we're essentially going to call a large swath of the same witnesses, present the same case twice, and if the Court's consideration is because this is some -- some -- this is prejudicial to the client or to the defendant, really prejudice in and of itself isn't enough for severance. It has to be manifest severance. It has to be a violation of one's constitutional right.

And so I would submit to the Court that --

THE COURT: Where in Rule 8 does the word prejudice even come in? I mean, where does it say that it has to be or it can't be prejudiced or it should not be -- or that the Court should look at prejudice?

MR. KARTCHNER: So I think -- it's certainly not in Rule 8, but I think the case law interpreting joinder is very specific on this. I would refer Your Honor to United States v. Whitworth, which says, "A denial of severance will be upheld absent a showing that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the Court's

discretion to sever."

So it's not an elucidated -- it's not a factor that's specifically Rule 11, but the case law talks about this because we don't want to go through multiple --

THE COURT: Which case is that? I'm sorry.

MR. KARTCHNER: This is United States v. Whitworth on page 6 of the Government's response.

THE COURT: Okay. Thank you.

MR. KARTCHNER: I would also highlight Zafiro, where, "A District Court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence."

So Count 2 we can -- we can talk about Count 2. I think that counsel's reference to what she expects the disclosure would prove, I think Count 2 there's questions about him representing that he had a license, which goes to the scheme. It goes to this -- the proof of engaging in the business of firearms.

And it just so happened that these firearms were unlawful, but the Government should be able to say, hey, this guy was saying that he had a license and he was telling people this. That's relevant to Count 1. It's certainly logically related to Count 1.

And as counsel conceded, they'll even say Counts 3 through 5, there's evidentiary overlap between Counts 1, 6, and 7.

I would also offer that, as far as Count 3 goes, the disclosure suggests this was just an outright sale, which was highly relevant, not just logically related, but on point with Count 1, which is engaging in the business of selling firearms without a license.

When you look at Counts 4 and 5, Count 4, the backdrop of this is the defendant -- or the victim identified in Counts 6 and 7 was -- would be a witness to Count 4 because that is one of the machine guns that this witness shot. So if we're going to sever these, we're going to have to call this witness for Counts 6 and 7 as well as Counts 4 and 5.

I would also offer, Your Honor, that what --

THE COURT: Wait, wait, wait, wait.

So you're saying in September of 2022, the victim is going to testify that he was trying to buy that firearm in November that you guys, I don't know, I guess got during a search warrant -- I don't know where you got it -- November 27 of 2023, that it's the same firearm is what you're saying?

MR. KARTCHNER: I'm not saying that, Your Honor, and I couldn't make any factual --

THE COURT: I thought you said right now he was shopping that gun, that specific gun in Count 4.

MR. KARTCHNER: No.

THE COURT: No?

MR. KARTCHNER: And I apologize. I can't speak to the timing, and I don't want to misrepresent the Court, but what I can speak to is this -- this victim would be involved in testifying about Counts 6 and 7, which is the fraud-related counts, as well as the possession of that specific firearm in Counts 4 and 5.

The witness, specifically the victim, shot that specific gun. I'm not saying that that specific gun and I don't believe that specific gun was a basis of fraud in Counts 6 and 7, but that particular victim shot that gun at some point in time. And so my point is, in terms --

THE COURT: So that victim is going to testify to the defendant's knowledge, obviously, that it was a machine gun, right, because they shot it together, and he says, and it went (making descriptive sound) when we were shooting it together; right?

MR. KARTCHNER: Right.

THE COURT: But how is -- you know, I guess you're losing me because the fraud, the wire fraud, the victim in that is the bank; right? You're naming the bank as the victim?

MR. KARTCHNER: Well --

THE COURT: Or is that for Count --

MR. KARTCHNER: For the bank fraud count.

THE COURT: For the bank fraud.

MR. KARTCHNER: Right. And then the wire fraud count, Count 7 --

THE COURT: Yeah.

MR. KARTCHNER: -- GC is the identified victim. And that -- and this particular individual --

THE COURT: And that's the money transfer one; right?

MR. KARTCHNER: Correct. And what I'm saying, Judge, it's a point of judicial economy. If this is severed, this particular witness would have to come and testify about the wire fraud for Count 7, the scheme to defraud, his interactions with the defendant.

He would also have to come and testify as to Count 4 because that's a gun that he shot with the defendant, so he would have knowledge and information about that. So in other words, we would be putting on substantially similar swaths of the same case twice. And so my point is that judicial economy's an overarching concern. It's one of the things we look at.

And then in terms of prejudice to the defendant, I would highlight this to Your Honor. The prejudice to defendant, it has to be manifest prejudice, it has to be substantial prejudice, and what defendants have failed to

acknowledge is, there are ways around this without severance, limiting instructions, for example.

And that can certainly be done here. To the extent it's necessary, to the extent that prejudice is deemed to be a concern, we can do a limiting instruction. We shouldn't go straight to severance, which is -- which is disfavored.

And I think that, if you take a step back and look at the forest through the trees, we have seven counts that all relate to guns and ultimately, specifically for Count 1, we have to prove that he was engaging in a business. It's not a single transaction --

THE COURT: Uh-huh.

MR. KARTCHNER: -- necessarily a single transaction. There's going to be evidence that goes into that. It just so happens that these firearms were unlawful. And the Government has to prove that.

Counts 2 through 5 are certainly logically related to that, and as defendant's conceded, very much evidentiary overlap. And when there's logical relation and evidentiary overlap, joinder is appropriate, and prejudice could be eliminated with limiting instructions.

And unless Your Honor has any more questions, I don't --

THE COURT: So let me just take you back.

MR. KARTCHNER: Sure.

THE COURT: What is your position if -- what Rule 8 says, right, if Rule 8 says you are only to look at the indictment to determine whether or not these counts are properly joined under Rule 8, I mean, do you believe that this indictment on its face, given the discrepancy in dates, that there's one year difference in, like, Counts 6 and 7, the Count 1 ends November 3rd, and then the possession starts, you know, on some of the other ones after?

So on its face, if we're only looking at the face, the four, you know, corners of the document, of the indictment, how is joinder appropriate?

MR. KARTCHNER: Sure.

THE COURT: You know, how do you meet the requirement of joinder?

MR. KARTCHNER: Sure. I would say the plain language of Rule 8 states, "The indictment or information may charge a defendant in separate counts with two or more offenses if the offenses charged are of the same or similar character," we're not talking about identical, "or are based on the same act or transaction" --

THE COURT: All right. Let me stop you before I lose my thought.

MR. KARTCHNER: Sure.

THE COURT: "The same or similar character." So the overarching theme here is guns; right?

MR. KARTCHNER: Sure.

THE COURT: That's it. Other than that, there's nothing really similar about, for example, the wire fraud or the bank fraud?

MR. KARTCHNER: I'm sorry, Your Honor?

THE COURT: I'm just trying to get you to tell me what is the same or similar -- you know, what is this arching -- overarching same or similar conduct that you're talking about?

MR. KARTCHNER: Well, I think that --

THE COURT: Or character. What is the same or similar character that you are talking about? Let's focus on that.

MR. KARTCHNER: Sure. The case law talks about these needing to have a logical relationship with one another. Guns certainly is a logical relationship. But the logical relationship can also be shown by a common scheme or a plan, and I think they're all interrelated in that Count Number 1 is engaging in business without a license, engaging in the sale of firearms without a license. Counts 2 through 5 relate to that scheme or plan. And I think evidence will be elucidated from Counts 2 through 5 that help demonstrate or at least provide context or at least logically relate, as the case law says, to Counts 6 and 7.

If you're going to ask me, Your Honor, does the face

of the indictment weave every count together and spell it out, it does not, and I will concede that. But I don't think the case law requires that. I think that they're substantially similar enough.

And if you really wanted to parse Counts 2, 3, 4 or 5, okay, well, in Count 3 we obviously have a sale. They don't dispute that. There is a sale there. So how would Count 3 not be related to Count 1 if we have to prove the element of him engaging in the business of selling firearms without a license?

THE COURT: Well, Count 3 is just possession though. It's not a sale. It's just possession of an unregistered firearm. Yeah, so --

MR. KARTCHNER: That's correct but --

THE COURT: Yeah.

MR. KARTCHNER: -- in terms of --

THE COURT: You're saying, in terms of the evidence --

MR. KARTCHNER: Right.

THE COURT: -- that's the firearm that your witnesses are going to --

MR. KARTCHNER: Correct.

THE COURT: -- testify to that he offered to sell?

MR. KARTCHNER: Correct.

THE COURT: Okay.

MR. KARTCHNER: Correct.

So essentially, if Your Honor severs this, then we'll be in a position, well, we'll have two trials. We'll do Counts 1, 6, and 7, and we'll do Counts 2 through 5. We will be calling large swaths of the same witnesses, presenting large swaths of the same evidence, and I think judicial economy would compel joinder to avoid that scenario.

And if it doesn't, it will be what it will be, and the Government will prove its case or attempt to prove its case.

THE COURT: Okay.

MR. KARTCHNER: But I think that the case law doesn't require such hyperfocused or precise pleading requirements to avoid joinder in cases that look like it's substantially similar.

THE COURT: Okay. Thank you.

All right. Ms. Hannah, do you wish to respond?

MS. HANNAH: So I actually think the case we relied upon, Jawara, speaks pretty clearly to this. That case dealt with counts for -- involving fraud on the defendant's asylum application and conspiracy to commit marriage fraud to avoid the immigration laws, and obviously both of those counts related to immigration. In fact they related to fraud in an interest to avoid immigration laws.

And the Court in the Ninth Circuit held that facial

similarity, the fact that they're both about immigration, is not a sufficient basis for joinder when the indictment otherwise did not set forth the facts that would be required to connect them.

And so I can't sit here and dispute that there would be overlapping evidence in multiple trials because I think that there would be, but I don't think that's the standard, and I think the Government made choices in crafting an indictment, and here it chose to leave out facts that would facially connect these allegations.

I also do want to touch on the prejudice issue really quickly. I believe prejudice is a separate rule, Rule 14. Many of the cases that deal with that are dealing with it on appeal, and so defendant goes on appeal and argues that joinder was so prejudicial that a conviction should be overturned.

And I agree that on appeal misjoinder doesn't necessarily require a conviction to be reversed, but I don't think that that changes the standard for the Court to apply in the first instance, which looks to the indictment. And I think the whole discussion that you had with the Government illustrates that everything that would be required to connect the dots between these charges is in the disclosure and not on the indictment itself.

I do just want to flag that I think the most serious

or the most compelling arguments for misjoinder are Count 2, which, as we've discussed, involves a gift transfer, and Count 5, which involves a stolen weapon. The fact that it's alleged to have been stolen seems somewhat incidental to the other charges, and so we are planning to file separate severance motions on those two counts. They may be rendered moot depending on how the Court rules in this case or on this motion before it, but I'll leave the -- I'll leave it there.

THE COURT: Okay.

All right. Thank you, counsel. I will take this under advisement. I know that Judge Márquez wants us to get a ruling on this quickly. I don't know if you have a trial date coming up or something, but --

MR. KASHTELYAN: It's in August.

THE COURT: It's in August? Do you have a pretrial deadline date maybe?

MR. KASHTELYAN: They gave a March 20th -- sorry. They gave a March 20th deadline.

THE COURT: March 20th pretrial deadline?

MR. KASHTELYAN: Right.

THE COURT: Okay. All right. So I'm going to order an expedited transcript so that we can get this out as quickly as possible.

Thank you, counsel.

MS. HANNAH: Thank you.

(Off the record from 11:52 a.m. to 11:53 a.m.)

THE CLERK: Recalling Case Number CR-24-3895. All parties are present.

MR. KASHTELYAN: We're just asking that Mr. Rubin's presence be waived at subsequent motions hearings. He would prefer not to be present, and we're fine with that.

THE COURT: Okay. We'll make a note of that in the minute entry, but also just include that in any pleadings in case we forget. Okay?

MR. KASHTELYAN: Okay. Got it. Thank you.

THE COURT: All right. Thank you.

(Proceedings concluded in this matter at 11:53 a.m.)

C E R T I F I C A T E

I, Erica R. McQuillen, do hereby certify that the preceding pages of typewritten matter are a true, correct, and complete transcription of the digital recording of proceedings in the above-entitled matter.

Dated this 13th day of March, 2026.

s/Erica R. McQuillen
Erica R. McQuillen, RDR, CRR